**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-25-00053-CV**

_____

**MOTIVA ENTERPRISES, LLC, Appellant**

**V.**

**TYLER WHITMIRE, Appellee**

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-206,281**

**OPINION**

In a permissive appeal, Motiva Enterprises, LLC, appeals from the denial of a motion for summary judgment in a personal injury case filed by Tyler Whitmire. This Court exercised its discretion to accept the appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d), (f). Because we conclude the trial court erred in denying summary judgment on Motiva's exclusive-remedy defense under the Texas Workers' Compensation Act ("TWCA"), we reverse and render.

1

## Background

Whitmire sued Motiva alleging he was injured on Motiva's premises on June 23, 2020, while working as an employee of RRR Electripro, LLC ("RRR").[1] After answering the lawsuit, Motiva filed a traditional motion for summary judgment asserting Motiva is immune from Whitmire's claims under the exclusive-remedy provision of the TWCA which states, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for . . . a work-related injury sustained by the employee." *See* Tex. Lab. Code Ann. § 408.001(a). Motiva's motion relies on sections 406.121 and 406.123 of the TWCA which indicate that when a general contractor enters into a written agreement with a subcontractor under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the subcontractor's employees, the agreement makes the general contractor the employer of the subcontractor's employees for workers' compensation purposes. *See id.* §§ 406.121(1), 406.123(a), (e). According to the motion, a premises owner qualifies as a "general contractor" under case law interpreting the TWCA.

---

[1]Whitmire also sued Dashiell Corporation, but Dashiell is not a party to this appeal.

The summary judgment motion argues Motiva is deemed to be Whitmire's employer for purposes of workers' compensation laws, because prior to Whitmire's injury, Motiva entered into a Master Service Agreement ("MSA") with RRR under which RRR's employees performed work on Motiva's premises, Motiva agreed in the MSA that Motiva would provide workers' compensation coverage for RRR and its employees if RRR enrolled under Motiva's Rolling Contractor Insurance Program ("RCIP"), RRR enrolled in the RCIP, and Whitmire received workers' compensation benefits for the injuries in question. As summary judgment evidence, Motiva attached an affidavit of an employee, Frances Soto, along with a copy of the MSA (to which the RCIP is attached as an exhibit), a copy of RRR's workers' compensation insurance policy issued by Zurich American Insurance Company ("Zurich") with effective dates of March 1, 2020 to March 1, 2021, (including an endorsement indicating that the policy was issued at Motiva's direction and that Motiva was solely responsible for payment of the premium), a copy of RRR's November 26, 2019 application for enrollment into Motiva's RCIP, and a copy of Whitmire's Answer to Interrogatories in which he confirms his receipt of workers' compensation benefits under the Zurich policy.

Whitmire filed a response directing the trial court's attention to the fact that the signatures on the MSA attached to Motiva's motion were undated, and when Soto was asked in her deposition about the signatures, she testified she did not know

whether the MSA was signed before or after Whitmire's accident. According to Whitmire's response to Motiva's summary judgment motion, Motiva waived any exclusive-remedy defense by contract because section 15.1 of the MSA indicates, "All of [RRR's] activities are those of an independent contractor, and [RRR], its employees, agents and representatives shall not be considered to be employees or agents of [Motiva]."

Motiva filed a reply asserting that the MSA was signed before Whitmire's accident and that Motiva did not waive its exclusive-remedy defense. Attached to the reply, along with an authenticating affidavit signed by Motiva's counsel, is a copy of a DocuSign certificate indicating the MSA was signed both by RRR's representative and by Motiva's representative on December 15, 2019.

After a hearing, the trial court denied Motiva's motion. Several months later, Motiva filed a Motion for Reconsideration, and after another hearing, the trial court vacated its previous order and issued a new order once again denying Motiva's motion for summary judgment, but this time detailing the trial court's reasons and granting Motiva's request for permission to file an interlocutory appeal. The order states:

> a. Motiva did not conclusively prove its exclusive remedy defense under Tex.Lab.Code [sic] Sections 408.001 and 406.123 by showing that Motiva subscribed to worker's compensation insurance and entered into a written agreement under Tex.Lab.Code [sic] §406.123 pursuant to which Motiva provided worker's compensation insurance coverage to Plaintiff's employer, RRR Electr[i]pro, LLC ("RRR") through a

4

Rolling Contractor Insurance Program ("RCIP") such that Motiva was deemed to be the employer of RRR and Plaintiff only for purposes of the worker's compensation laws of the State of Texas; and

b. Even if Motiva produced evidence that, taken alone, would have conclusively proven the exclusive remedy defense under Tex.Lab.Code [sic] Sections 408.001 and 406.123, Plaintiff met his burden of raising a fact issue which precluded summary judgment for Motiva based on the exclusive remedy defense by showing that Motiva's including a description in Section 15.l of the written agreement of RRR and its employees as "independent contractors" resulted in Motiva's "waiving" or "opting out" of the exclusive remedy defense afforded to them under Sections 408.001 and 406.123 as Plaintiff's statutory employer.

In compliance with Texas Rule of Civil Procedure 168, the order identifies "the controlling question of law . . . over which there is a substantial ground for difference of opinion[]" by recasting as questions the trial court's two above-quoted rationales, and "state[s] why an immediate appeal may materially advance the ultimate termination of the litigation[]" by stating, "A finding that the exclusive remedy defense applied and that Motiva did not waive or 'opt out' of the defense would resolve [Whitmire's] claims against Motiva, resulting in a take-nothing judgment and avoiding the need for a trial." *See* Tex. R. Civ. P. 168.

**Jurisdiction and Scope of Review**

As a preliminary matter, we address whether we have jurisdiction over this permissive appeal, and if so, we determine the scope of our review. Texas Civil Practice and Remedies Code section 51.014(d) provides:

5

> On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:
>
> > (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and
>
> > (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d). When permission is granted, Texas Rule of Civil Procedure 168 requires a trial court to enter a written order granting permission, identifying the controlling question of law, and stating why an immediate appeal is warranted. *See* Tex. R. Civ. P. 168. Texas Rule of Appellate Procedure 28.3 requires an appellant to file in the appropriate court of appeals a petition arguing "clearly and concisely why the order" meets the requirements of section 51.014(d)(1) and (2). *See* Tex. R. App. P. 28.3(a), (e)(4). Assuming the jurisdictional requirements are met, the courts of appeals have discretion whether to accept the appeal. *See Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 732 (Tex. 2019); *Indus. Specialists, LLC v. Blanchard Refin. Co. LLC*, 652 S.W.3d 11, 21 (Tex. 2022) (plurality op.).

Motiva's sole issue on appeal asserts the trial court erred in denying its motion for summary judgment on its exclusive-remedy defense. Motiva's brief presupposes its summary judgment evidence was sufficient to conclusively establish the MSA was signed prior to Whitmire's injury and proceeds directly to a discussion of the

6

legal effect of the MSA, RRR's enrollment in the RCIP, and Whitmire's receipt of workers' compensation insurance benefits. Whitmire's brief responds to Motiva's arguments but not without reiterating his argument in the trial court that Motiva failed to establish the MSA was in effect at the time of the accident since the signatures on the MSA attached to Motiva's motion are undated and Soto did not know whether the MSA was signed before or after the accident. Echoing arguments first presented in his response to Motiva's petition that we accept this permissive appeal, Whitmire's brief includes a request that we dismiss the appeal "because the case does not involve an appropriate 'controlling question of law.'" According to Whitmire:

> The convoluted "controlling questions of law" identified in the trial court's order would require the court to interpret Motiva's contract with Whitmire's employer *and* to determine whether Whitmire's summary judgment evidence was sufficient to present a fact issue as to waiver or opting out of the exclusive remedy provision. These are not the sort of "pure" questions of law that the Court []"could decide quickly and cleanly without having to study the record" such that a permissive interlocutory appeal might be appropriate. (emphasis in original).

Whitmire relies on authorities such as *Hartford Accident & Indemnity Company v. Seagoville Partners*, No. 05-15-00760-CV, 2016 Tex. App. LEXIS 6220, at *6 (Tex. App.—Dallas June 9, 2016, no pet.) (mem. op.), in which the Dallas Court of Appeals held, "If the trial court denies a motion for summary judgment based on the existence of fact issues or the movant's failure to meet its burden on summary judgment rather than a substantive ruling on a controlling legal

7

issue, we have no jurisdiction to review the trial court's ruling under [section] 51.014(d)." Were we to follow *Hartford's* reasoning, we would likely conclude that we do not have jurisdiction to conduct an interlocutory review of the trial court's summary judgment order under section 51.014(d), because the first ground states that Motiva failed to meet its burden to conclusively establish its exclusive-remedy defense (perhaps implying there was a fact issue about whether the MSA was signed before the accident), and the second ground expressly states there is a fact issue regarding waiver. But we decline to follow *Hartford*.

In *Hartford,* the Dallas Court of Appeals "strictly construe[d] [section] 51.014(d)'s] jurisdictional requirements" because section 51.014(d) "provides 'narrow exception[s] to the general rule that only final judgments and orders are appealable[.]'" *Id.* at *5 (quoting *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001)). The Dallas court is not alone; indeed, the Texas Supreme Court and almost all Texas courts of appeals (including this Court) have at least purported to strictly construe section 51.014(d) on the basis it is a narrow exception to the general rule disfavoring interlocutory appeals. Nevertheless, we question both the premise (that the statute creates a "narrow" exception to a "general" rule), and the conclusion (that we should strictly construe such a statute).

We acknowledge that it was at one time true that Texas followed a general rule requiring the existence of a final judgment before a party could file an appeal.

8

*See, e.g.*, *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (recognizing

"the general rule, with a few mostly statutory exceptions, is that an appeal may be

taken only from a final judgment"). However, it is now true that the "statutory

exceptions" mentioned in *Lehmann* have expanded in recent years. Viewed

collectively, the various provisions of section 51.014 provide so many avenues for

interlocutory appeal that it is reasonable to question whether the rule disfavoring

interlocutory appeals is as "general" a rule as it once was. It has been seven years

since the Texas Supreme Court observed:

> [W]e said in *Bally Total Fitness Corp. v. Jackson* that Section 51.014
> should be "strictly construed as a 'narrow exception to the general rule
> that only final judgments and orders are appealable.'" That may have
> been the general rule once upon a time. Before 1979, interlocutory
> appeals were allowed in very few cases, only from orders appointing or
> refusing to vacate the appointment of a receiver or trustee, and granting
> or denying a temporary injunction. In 1979, the Legislature added
> another category of orders certifying or refusing to certify a class. So
> when Section 51.014 was first codified in 1985, it had four
> subsections—83 words—covering those orders. Now, the statute—in
> four times as many words—allows interlocutory appeals in 13 broad
> types of cases. Additionally, an interlocutory appeal can be taken from
> any order that "involves a controlling question of law as to which there
> is a substantial ground for difference of opinion" if permitted by the
> trial court, accepted by the court of appeals, and "an immediate appeal
> . . . may materially advance the ultimate termination of the litigation."
> Limiting appeals to final judgments can no longer be said to be the
> general rule.

*Dall. Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753, 758-59 (Tex. 2019) (citing

*Bally*, 53 S.W.3d at 355; other citations omitted). The statute has been amended

several times since, creating even more pathways for interlocutory appeals.

9

Moreover, the Texas Supreme Court has described section 51.014(d) as providing an exception that is "broader" than the others listed in the statute's provisions "authorizing appeals from specific types of interlocutory orders[.]" *See Indus. Specialists, LLC*, 652 S.W.3d at 14.

But even if a permissive appeal under section 51.014(d) is still considered a "narrow" exception to a "general" rule, we doubt our role is to "strictly" construe the statute in a way that narrows the exception even further by judicial fiat when a fair reading of the text would require us to apply the "exception" rather than the "rule." Moreover, it seems somewhat circular to justify strict construction on the basis that the statute creates a narrow exception and then employ strict construction to conclude that the exception created by the statute is a narrow one.

> Further, characterizations of textual interpretations as "strict", "liberal", "narrow", "broad", and the like are not helpful when, as is usually the case, the real goal is simply a "fair" reading of the language. *Bally* can be forgiven for describing the fair construction of Section 51.014 as strict when for decades interlocutory appeals had been rare. But as the statute has expanded, a fair reading of the statute must simply give effect to all its provisions.

*Dall. Symphony Ass'n, Inc.,* 571 S.W.3d at 759 (citations omitted) (construing Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6)). We, therefore, employ a fair reading of section 51.014(d), "giv[ing] effect to all its provisions[,]" while imposing none of our own. *Id*.

10

Whitmire urges us to dismiss the appeal on the basis only "pure" questions of law are appropriate for permissive appeal. Citing *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 677 (7th Cir. 2000), Whitmire's brief asserts, "The term 'question of law' does not mean the application of law to fact. Instead, it is an abstract legal issue or 'pure' question of law—matters that the court of appeals 'can decide quickly and cleanly without having to study the record.'" We find no such limitation in the text of the statute which simply requires that "the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion[]" and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d)(1), (2). Nor does the text of the statute prevent us from reviewing questions of law that arise from a trial court's procedural rulings or application of legal principles to the facts of the case. *See id.; contra Archibald v. El Paso Orthopedic Surgery Grp., P.A.*, No. 08-22-00091-CV, 2023 Tex. App. LEXIS 1192, at *15 (Tex. App.—El Paso Feb. 24, 2023, no pet.) (mem. op.) (dismissing appeal and stating, "[T]he controlling issue must be solely a question of law unconstrained by procedural or factual issues.").

Whether an affidavit meets the requirements of Texas Rule of Civil Procedure 166a(f), whether a particular summary judgment exhibit is admissible, whether the moving party has met its burden to conclusively establish all elements of a claim or defense, or whether the responding party's evidence is sufficient to raise a fact issue

11

on at least one element of a claim or defense are all questions of law. *See Truck Ins. Exch. v. Chalfant*, 192 S.W.3d 813, 816 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Because the propriety of a summary judgment is a question of law, we review the trial court's summary judgment decision de novo."); *Hartford*, 2016 Tex. App. LEXIS 6220, at *6 n.1 ("As with all summary judgments, whether a summary judgment movant conclusively established its entitlement to summary judgment or the non-movant raised a genuine issue of material fact is a legal question subject to de novo review."). And in an appropriate case, appellate review of a trial court's determinations of whether a party has satisfied the procedural, admissibility and evidentiary requirements for obtaining or resisting summary judgment could easily prove outcome determinative.

The existence of such issues may influence how we exercise our discretion when reviewing a petition for permissive appeal, but it does not deprive us of jurisdiction so long as the controlling question of law is one about which there is reasonable grounds for disagreement and the other statutory requirements are met. *Compare Kbcb Invs. v. Black*, No. 03-23-00306-CV, 2023 Tex. App. LEXIS 5777, at *5 (Tex. App.—Austin Aug. 3, 2023, no pet.) (mem. op.) (exercising discretion to deny petition for permissive appeal "[g]iven the procedural and factual circumstances of the case"), *Reyna v. Garcia*, No. 07-23-00230-CV, 2023 Tex. App. LEXIS 5125, at *3 (Tex. App.—Amarillo July 13, 2023, no pet.) (mem. op.)

12

(exercising discretion to deny petition for permissive appeal because the "purportedly controlling legal issues at bar are not unconstrained by factual issues"), *and El Paso Tool & Die Co., Inc. v. Mendez*, 593 S.W.3d 800, 805 (Tex. App.—El Paso 2019, no pet.) (exercising discretion to deny petition for permissive appeal, noting, "But to that end [i.e.—the exercise of sound discretion], the controlling issue needs to be solely a question of law unconstrained by procedural or factual issues."), *with State v. LBJ/Brookhaven Invs, L.P.*, No. 05-25-00525-CV, 2025 Tex. App. LEXIS 3852, at *6 (Tex. App.—Dallas June 5, 2025, no pet.) (mem. op.) (dismissing permissive appeal which "turn[ed] on resolution of fact questions that are inappropriate in a permissive appeal" to meet statutory requirements), *In re Est. of Ward*, No. 02-24-00330-CV, 2024 Tex. App. LEXIS 6587, at *8 (Tex. App.—Fort Worth Aug. 27, 2024, no pet.) (mem. op.) (denying petition for permissive appeal because the order involved "procedural or factual issues" which failed to satisfy statutory requirements), *Mack v. Pittard*, No. 04-24-00201-CV, 2024 Tex. App. LEXIS 3880, at *11 (Tex. App.—San Antonio June 5, 2024, no pet.) (mem. op.) (dismissing petition for permissive appeal for want of jurisdiction), *Hartline Barger LLP v. Denson Walker Props., LLC*, No. 05-23-00126-CV, 2023 Tex. App. LEXIS 9244, at *3 (Tex. App.—Dallas Dec. 11, 2023, no pet.) (mem. op.) (denying petition for permissive appeal without indicating whether on jurisdictional or discretionary grounds, but noting that questions of law were "constrained by the facts" and

characterizing as "rare" the possibility that a controlling legal question may arise "in determining whether a fact issue exists in the context of a summary judgment"), *and JAJ Equip., Inc. v. Ramos*, No. 04-21-00459-CV, 2021 Tex. App. LEXIS 10169, at *9 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (denying petition for permissive appeal and dismissing appeal for lack of jurisdiction "[b]ecause the certified question is constrained by factual and procedural issues").[2]

Because the trial court's order in this case "involves" a controlling question of law that is subject to reasonable dispute, and because resolution of the issue may be outcome determinative thereby resulting in termination of the litigation, we have jurisdiction over the entire permissive appeal, and we must address "all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue." *See Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 147 (Tex. 2022) (citing Tex. R. App. P. 38.1; 53.2). We must not "artificially constrict[] the scope of appellate review" under a mistaken supposition "that permissive interlocutory

---

[2]Each of the cited cases indicates the controlling question of law must be "solely a question of law unconstrained by procedural or factual issues." This phrase was first introduced in Chief Justice Gray's dissent in *College Station Medical Center v. Kilaspa*, 494 S.W.3d 307, 312 (Tex. App.—Waco 2015, pet. denied) (Gray, CJ, dissenting), where he explained "why we should be so very careful when we agree to accept a permissive appeal." Originally intended as a consideration in the exercise of discretion to accept or deny a permissive appeal, the phrase has seemingly transmogrified into a jurisdictional prerequisite, one which we do not believe is justified by a fair reading of the statute's text.

appeals are substantively different because the procedural vehicle for pursuing one is different than other types of appeals." *Id.* at 146 (citations omitted). Reviewing whether the trial court erroneously denied summary judgment in this case necessarily includes resolving whether there was a genuine issue of fact regarding when the MSA was signed, whether Motiva's summary judgment evidence was sufficient to conclusively prove its exclusive-remedy defense, and whether Whitmire raised a fact issue that Motiva waived its defense by contractually designating RRR and its employees as independent contractors. Therefore, those are the issues that are properly within the scope of our review. *Id*.

**Standard of Review**

An order denying summary judgment is reviewed de novo on appeal. *See APAC-Tex., Inc. v. Beasley,* No. 09-13-00390-CV, 2014 Tex. App. LEXIS 2570, at *4 (Tex. App.—Beaumont Mar. 6, 2014, no pet.) (mem. op.). With respect to a traditional motion for summary judgment, the movant must establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). "If the party opposing a summary judgment relies on an affirmative defense, he must come

15

forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548-49 (Tex. 1985). We review the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

**Analysis**

*Was there a fact issue about when the MSA was signed?*

Motiva's motion for summary judgment relies on the MSA as evidence of one or more elements of its exclusive-remedy defense. The trial court's order stating that Motiva's motion for summary judgment was denied because "Motiva did not conclusively prove its exclusive remedy defense" could be interpreted as an indication the motion was denied because there was a fact issue about whether the MSA was in effect at the time of Whitmire's injury since Whitmire's response pointed out that the signatures on the MSA were undated and Soto was unsure whether the MSA was signed before or after Whitmire's injury, arguments Whitmire reiterates on appeal. However, Motiva filed a reply to Whitmire's summary judgment response and provided the trial court a DocuSign certificate showing

16

RRR's representative and Motiva's representative signed on December 15, 2019. The certificate is accompanied by an authenticating affidavit signed by Motiva's counsel. Whitmire did not object. Thus, any evidence which had been missing from Motiva's motion was supplied when Motiva filed its reply. The same evidence was supplied again, without an objection from Whitmire, when Motiva filed its Motion for Reconsideration. Combined with the other summary judgment evidence, the certificate conclusively establishes the MSA was signed before Whitmire's injury. Soto's deposition testimony does not create a fact issue, because her lack of knowledge about when the MSA was signed does not constitute evidence that it was not signed on the dates shown in the certificate.

We conclude Motiva did not fail to establish its exclusive remedy defense on the basis that the summary judgment evidence raises a genuine issue of fact regarding the date the MSA was signed.

*Did Motiva conclusively establish its defense?*

The trial court's order stating that Motiva's motion for summary judgment was denied because "Motiva did not conclusively prove its exclusive-remedy defense" could be interpreted as an indication that even if the MSA was proven to be in effect at the time of Whitmire's injury, the MSA and other summary judgment evidence was insufficient to establish Motiva's defense as a matter of law.

17

The exclusive-remedy provision of the TWCA states, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." Tex. Lab. Code Ann. § 408.001(a). Section 406.123 of the TWCA "allows general contractors and subcontractors to enter into written agreements 'under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." *Becon Constr. Co., Inc. v. Alonso*, 444 S.W.3d 824, 829 (Tex. App.—Beaumont 2014, pet. denied) (quoting Tex. Lab. Code Ann. § 406.123(a)).[3] When a general contractor and a subcontractor enter into such a written agreement, the general contractor becomes "the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state." Tex. Lab. Code Ann. § 406.123(e).

Motiva provided summary judgment evidence that prior to Whitmire's injury, Motiva and RRR entered into an MSA regarding RRR's work at Motiva's facility; that section 13.3 of the MSA provided that in the event Motiva decided to implement

---

[3]"[A] premises owner can be a general contractor under the definition provided in the Act." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 438 (Tex. 2009). Whitmire does not contend Motiva is not a "general contractor" under the TWCA.

an RCIP program, Motiva's and RRR's insurance obligations under the MSA were set out in Exhibit C to the MSA, which included provisions indicating that the RCIP would provide program enrollees with workers' compensation insurance coverage related to work performed under the MSA and that Motiva would pay for all costs of such insurance; that RRR opted to enroll into the program prior to the incident in question; that at Motiva's request and expense, Zurich issued a workers' compensation policy insuring RRR and its employees at the time of the incident; and that Whitmire received workers' compensation benefits from Zurich for the injuries in question. We conclude these facts were sufficient to establish Motiva's exclusive-remedy defense, and the burden shifted to Whitmire to raise a genuine issue of material fact. Because Whitmire did not provide any evidence controverting any of these facts, we conclude Motiva's summary judgment evidence conclusively established its exclusive-remedy defense, and the burden then shifted to Whitmire to provide some evidence of an affirmative defense in opposition to the motion.

*Did Whitmire raise a fact issue that Motiva waived its defense?*

In support of its affirmative defense that Motiva waived its exclusive-remedy defense, Whitmire provided the trial court summary judgment evidence consisting of the MSA and excerpts of Soto's deposition testimony. Whitmire directed the court's attention to sections 15.1 and 19 of the MSA which state:

15. BUSINESS RELATIONSHIP OF THE PARTIES.

    15.1 Independent Contractor Status. All of [RRR's] activities are those of an independent contractor, and [RRR], its employees, agents and representatives shall not be considered to be employees or agents of [Motiva]. As an independent contractor, [RRR] assumes all legal and contractual obligations arising out of the performance of this Agreement, no matter to whom such obligations may be owing, whether to the country or any political subdivision thereof, to [RRR's] own personnel or to third persons. [Motiva] may instruct and direct [RRR] as to the results to be obtained from [RRR's] employees. [RRR], as an independent contractor, however, shall have complete control, supervision and direction over its equipment and personnel and over the manner and method of all its activities.

[. . .]

19. ORDER OF PRECEDENCE.

Subject to Section 2.2, in the event of a conflict between the documents forming a part of this Agreement, the conflict shall be resolved in accordance with the following order of precedence: the body of this Master Services Agreement, any Exhibits, appendices or other contracts incorporated herein by reference or referencing this Agreement, and any Purchase Order relating to this Agreement[.]

Whitmire also pointed out that Soto testified in her deposition that Motiva could have included, but did not include, a provision indicating RRR and its employees would be independent contractors "except in the context of an RCIP program wherein [Motiva] will consider [them] employee[s] for purposes of workers' compensation under that insurance contract[.]" Whitmire relies on Section 406.122(b) of the TWCA which states as follows:

    A subcontractor and the subcontractor's employees are not employees of the general contractor for purposes of this subtitle if the subcontractor: (1) is operating as an independent contractor; and (2) has

20

entered into a written agreement with the contractor that evidences a relationship in which the subcontractor assumes the responsibilities of an employer for the performance of work.

*Id*. § 406.122(b).

We have previously analyzed a similar scenario in *Palmer v. Newtron Beaumont, L.L.C.*, No. 09-15-00248-CV, 2016 Tex. App. LEXIS 1684 (Tex. App.—Beaumont Feb. 18, 2016, pet. denied). The plaintiff in *Palmer* argued sections 406.122(b) and 406.123 were in conflict and since the provisions of section 406.122(b) were satisfied, the trial court erred in granting summary judgment for Newtron. *Id*. at *6. We stated:

> In construing statutes, we are to consider all laws related to the subject of the act and the general system of legislation of which the act forms a part. *Reed v. State of Tex. Dep't of Licensing & Regul.*, 820 S.W.2d 1, 2 (Tex. App.—Austin 1991, no writ). "[Our] objective is to ascertain the consistent purpose of the legislature in the enactment of the laws and to carry out the legislative intent by giving effect to all laws bearing on the same subject . . . ." *Id*. We must presume that the Legislature intended a just and reasonable result, and meant for the entire statute to be effective. *Indus. Accident Bd. v. Martinez*, 836 S.W.2d 330, 333 (Tex. App.—Houston [14th Dist.] 1992, no writ). We should not give one provision a meaning that is out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone; that is, if a general provision conflicts with a more specific provision, we must construe the provisions to give effect to both if possible. Tex. Gov't Code Ann. § 311.026(a); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978).

*Id*.

We held in *Palmer* that sections 406.122 and 406.123 are not in conflict; rather, section 406.122(b) indicates an independent contractor and its employees are not the employees of the general contractor for general purposes, whereas section 406.123 is an exception allowing the parties to enter into a contractual agreement the legal effect of which is to make the subcontractor and its employees the general contractor's employees for purposes of the TWCA. *Id*. at *7.

Following our opinion in *Palmer*, the Texas Supreme Court analyzed the relationship between sections 406.122 and 406.123 and held "Section 406.123 permits a purely voluntary election in which the parties 'may' reach an agreement that alters the parties' relationship. Parties need not 'opt out' to avoid the effects of a permissive statutory arrangement; they may simply decline to make the agreement in the first place." *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 78 (Tex. 2016). *TIC* further explains that it is illogical to argue that "a general contractor and a subcontractor would enter an agreement under section 406.123 but disclaim whatever benefits and protections might ensue as a result." *Id*. at 78.

Applying the principles of statutory construction, our decision in *Palmer* and the Texas Supreme Court's opinion in *TIC,* we conclude that sections 406.122(b) and 406.123(a) do not conflict; rather, section 406.122(b) addresses the relationship between a general contractor, a subcontractor and the subcontractor's employees, generally, while section 406.123 allows the parties to enter into an agreement

22

whereby the general contractor provides the subcontractor and its employees with workers' compensation coverage, thereby making the general contractor the employer of the subcontractor and the subcontractor's employees for workers' compensation purposes. *See* Tex. Gov't Code Ann. § 311.026(a); *Wilkins*, 47 S.W.3d at 493; *Barr*, 562 S.W.2d at 849; *Martinez*, 836 S.W.2d at 333; and *Reed*, 820 S.W.2d at 2.

Applying the same rationale, we conclude section 15.1 of the MSA does not conflict with section 13.3, nor Exhibit C, nor the RCIP. The provisions do not, on their face, contain any conflicting language. Rather, it is only the legal effect of the provisions that may be said to be in conflict, but no such conflict would exist unless we were to accept Whitmire's interpretation of sections 406.122 and 406.123 of the TWCA. Since we have already adopted a harmonious reading of those statutory provisions, we conclude their contractual counterparts in the MSA and RCIP are also not in conflict. Section 15.1 does not constitute a contractual waiver of Motiva's exclusive-remedy defense under the RCIP; rather, section 15.1 states the general rule, and sections 13.3, Exhibit C and the RCIP provide an exception for workers' compensation purposes. And because there is no "conflict between the documents forming a part of [the MSA,]" section 19 of the MSA, which prescribes an "order of precedence" when there is such a conflict, does not apply.

We conclude Whitmire's summary judgment evidence does not raise a fact issue that Motiva waived its exclusive-remedy defense by entering into a contract which contains a provision indicating RRR and its employees are independent contractors.

## Conclusion

We conclude that the trial court erred by denying Motiva's motion for summary judgment. Accordingly, we sustain Motiva's sole issue, and we reverse and render summary judgment in favor of Motiva.

REVERSED AND RENDERED.

KENT CHAMBERS
Justice

Submitted on March 11, 2026
Opinion Delivered March 26, 2026

Before Golemon, C.J., Johnson and Chambers, JJ.